Good morning. Your Honor, may it please the Court, it's Jonathan Siegel on behalf of Appellant First Amendment Coalition. When this case began, the government conceded absolutely nothing. They made a glomar response which refused to confirm or deny the existence of even a single document that was responsive to the First Amendment Coalition's FOIA request. By the end of the case, not only had the glomar response of the government been abandoned, but in fact the First Amendment Coalition had achieved complete success. It received two documents responsive to its FOIA request and a representation from the government that those documents were the entire universe of documents that were available and responsive. So you have two memorandums that you've focused on with me. Is your position that each of those disclosures warrant your entitlement to fees or just the second memorandum? It is our position that both of those memoranda justify the award of fees. I understand that. Either one individually. I understand that. This is my deepest problem and help. Why? Because as long as one is, you can basically rule out one that might be taken to account as a necessary amount of fees. Correct, Your Honor. That's what I was about to say. Only one memoranda is necessary to award fees and even. Your Honor, there's something that's really troubling me here. You seem to accept throughout your briefing that the standard that applies here is the standard that applied before the amendment to the statute with regard to the causation requirement. Is that right? Yes, Your Honor. But the statute seems to me to say something different. It says that the substantially prevailed is a voluntary or unilateral change in position. If the claimant's claim is good and substantial, it doesn't say anything about the voluntary or unilateral change having to be caused by the lawsuit. And there could be a good reason for that because we get into exactly the kind of problems we have here. I believe Your Honor is correct in construing the statute broadly because that construction is supported by the policy of FOIA, which is to encourage the kinds of lawsuits that you're seeing. As far as the setting C, I want to know this. Is there any case since the amendment of the statute, which of all the cases that are cited by both sides that I could find, with regard to the causation standard and how you would read or read the statute, is there any post-statute case which says it's still the same standard and all its cases don't apply? Your Honor, we haven't seen a case which directly addresses the issue that you're raising. However, in our briefing below, we did quote both the standard and the legislative history of the standard, which suggests that it was meant to be a broadening of the standard and a weakening of the causation. But you didn't argue that in your ruling. It just seems obvious to me that the statute was meant to do something else, which was to conclude this kind of inquiry, which is apparently an impossible inquiry because we don't know what caused the peak to anything. Yes, Your Honor, you're correct in that we don't know what caused them to do anything in the chronology of events. They just know that there were a bunch of things happening and they finally made a decision. They certainly didn't put any evidence into the record of the justification for what they were doing. And even if we were to apply the more stringent standard that the government suggests applied, and that, you're correct, was more brief than the standard that you're suggesting, the record is clear that the CIA memo came out directly in response to the pressure applied to this case during the pending motion for reconsideration. We don't know that, but in response to it, we know that it came at that time, and somebody would have to litigate. We know the district court didn't do a whole lot with regard to causation, but we don't know. There isn't any evidence from the government, but there is evidence in the record that First Amendment Coalition put in, specifically evidence of the meet and confer that occurred on June 24th and 25th, where the government said, we have a second memorandum that's responsive to this request, and if we provide it to you, do you think this will move the case? The government, in their briefing, said that the existence of a second memorandum was in response to a Southern District of New York order. However, at the time that the memorandum was revealed to First Amendment Coalition, the Southern District of New York didn't have jurisdiction over this case and had not yet made their order. How did the district court defend it? I was confused about this. Did the district court of New York ever actually make an order? The chronology goes like this, and no, Your Honor. June 24th and 25th, the government says, First Amendment Coalition, we have a responsive document that has not yet been disclosed. If we give it to you, do you think this is going to move the case? The day after that meet and confer, jurisdiction returns to the Southern District of New York. On June 30th, four days after, five days after the meet and confer, the Southern District of New York says, Orders, turn over to us in camera for review of any other responsive memoranda, along with argument as to whether you've waived any exemptions for them. Then on June 3rd, the government emails us, confirming that they are going to turn over this memo. And then on July 9th, excuse me, July 3rd, the government emails First Amendment Coalition. On July 9th, the Southern District of New York makes an order rejecting a new round of summary judgment briefing in the Southern District of New York over whether that document or any other responsive memoranda was exempted. The government had requested a new round of briefing about first summary, so they're still fighting in the Southern District of New York. There's no court order saying you must produce this document. Nothing I can see, Your Honor. So this document, you know, arguably was to be produced through camera to the dark eyes of the Southern District judge. And then what happened after that was that in California, the government intentionally, you said, in order to dispose of litigation in your case. I have that right? Almost, Your Honor. To intentionally dispose of litigation in the Northern California case and also the document was offered, slashed revealed to us in California before it was ever offered or any order existed in the Southern District of New York. It was released on August 15th. It was all were released on August 15th in both cases. So it wasn't released to you before it was released? It was offered to us before it was ever revealed in the Southern District of New York, and that's contrary to what the government says in its briefing. Counsel, just a second. We have to review the district court's factual findings for clear error. Is that correct? No, Your Honor. Under what authority do we not have to? The district court applied the incorrect legal standards. So the review here is de novo. Specifically, when the district court made its determination about fees, it stated explicitly the First Amendment Coalition achieved any success in this litigation as a result of the Second Circuit, not as a result of a ruling, and the word ruling is key here in this case. The district court improperly insisted on a ruling, and that is contrary to the plain language of the statute, which talks about voluntary or unilateral capitulation. So you're saying we can't accept that as fact, that it's got to be reviewed as a legal determination, because it seems like that was her finding regarding causation, regarding the delivery of information, that it was due to, in large part, to the Second Circuit. And so that seems to be, at least my reading of the district court's view of the causative effect of the ultimate release. Even if we were to accept that that's a question of fact, and even if we were to disregard the fact that the government submitted not even a conclusory declaration about what happened in the black box of its own deliberations, the district court committed clear error. Can you tell me why? For a number of reasons. One, the district court failed to take into account the lack of evidence submitted by the government. Two, the district court failed to... If there's a lack of evidence by the government, what do you mean specifically? The government submitted no evidence of it. We'd argue that there was a burden that we had to meet to show that the document came out. The burden on causation isn't settled law, but that we submitted evidence, both circumstantial evidence of the chronology and also specific evidence of the pressure it put forward, that we, that First Amendment Coalition, was cause of the document coming out. I guess when you say that, that the district court just got it's final draw when they basically concluded that the Second Amendment was also as close as we said it was. Is there anything else you'd like to add? Yes, Your Honor. Additionally, the district court failed to account for the government's change of position mid-case before there was ever any Second Circuit opinion. And in fact, in its statement of facts and its order, the district court incorrectly construed the nature of the government's response to the FOIA request. Substituting the government's second response to the FOIA request and not considering the government's first overarching global response. To return to what you mentioned, the curiosity was as to whether they considered both memorandum or just the second memorandum. Do you possibly concede that the first memorandum came back to the district of New York and not to California? And that the leadership only focused on the second memorandum in its thinking? No, Your Honor. I think the circumstances are most clear regarding the CIA memorandum. But the First Amendment Coalition has an independent basis for fees with regard to the Second Circuit decision. And why would your rationale use including the first memorandum? At the time that the initial First Amendment Coalition FOIA request was made, if I understand your question correctly, there were no memoranda at all. As far as this First Amendment Coalition having a justification for claiming part of that success, the pressure applied by this suit and its existence resulted in the government deciding not to appeal the Second Circuit opinion en banc because that would have guaranteed that both litigations proceeded parallel. And this was a concern the government made clear in its briefing on the initial motion to stay in this case where the government said, we don't want to have conflicting national security, FOIA authority in two circuits. Yes, Your Honor. And also... Yes, Your Honor. Additionally, the Second Circuit mentioned this case in its opinion, even though that hadn't been briefed by any of the parties below. So obviously the Second Circuit was watching this case and keeping tabs on the briefing. Additionally, the change of position previous to any Second Circuit opinion also offers an independent justification for FATA where the government withdrew its initial glomar and confirmed the existence of another response memorandum. That isn't the correct characterization. The revealing of whether the United States killed Al-Awlaki may have been made at the highest level of government, but the decision to confirm the existence of a response memorandum is a second-order decision that had to have taken place within the Department of Justice and revealed some information that went beyond what the executive, what the President and the Attorney General revealed. Basically, that the Department of Justice was sought out for legal advice, that there was intelligence sufficient to justify making a legal opinion. I mean, all of these reasons were pointed out in the government's own declarations when they initially attempted to justify their glomar with Exemption 5, I believe. I'll reserve the rest of my time, Your Honor. Thank you so much. May it please the Court. Your Honor is entirely correct. This is a clear error standard for you, and there was no clear error, I ask you this. I'll tell you, I have a hard time even getting to clear error because it's hard for me to get past the Department of Justice, I think, failure of duty of candor to the district court, knowing that the white paper had been released by DOJ and the FOIA request from Truthout, that they conceded that to the Second Circuit in some way. The whole time, knowing that that's the main issue back here in Northern District of California, it never disclosed that to the district court. I have a hard time with that. Can you explain that to me? Your Honor, I have come in at the fee stage. I did not handle the FOIA litigation before, but I will say that the plaintiff certainly raised those same concerns in its motion for vacatur and in its motion for fees, and in response, the government introduced the second declaration of John Beas, who is the Deputy Assistant Attorney General for the Office of Legal Counsel, and he explained in some detail the differences between this draft DOJ white paper and the OLC DOD memorandum that the plaintiffs have tried to say was the same thing, and the district court in this case said it considered all of this, and it said none of this is relevant to fee eligibility. So, I understand that. Why did you say that? I'm paraphrasing, Your Honor. Yes, you are paraphrasing because, and I know that, you know, there's a difference between eligibility and entitlement to fees. Yes, Your Honor. This goes more to entitlement, but it still, still is troubling that, especially given that at least one attorney was counseled for DOJ in both the present case and the Second Circuit appeal. There's one attorney who was on both of those cases, and how, you know, the two courts have a, they didn't have a different complete set of facts in front of us. I've been just having a hard time understanding concession in New York and failure to disclose, and I want you to answer whether or not that would have been critical to the success of the fees in this case if they had disclosed, if DOJ had disclosed that. Because would they not have proceeded in getting that, and wouldn't they have gotten it first? Your Honor, even though the DOJ draft white paper had been leaked at that time and then acknowledged, let's say that I know that the Department of Justice did say that it had been acknowledged even in this case and told the District Court. So the District Court did have that in front of it. Even with that information, you know, the government continued to contest that before the Second Circuit, so there were still arguments that the government was making. In light of the dispositive weight that the Second Circuit, you know, placed on the release of the white paper, it was clear in their opinion, I'm just trying to understand how the release of that information could not be considered material in this case. Your Honor, I'm not trying not to answer your question, but whether it was material or not, that was the way that the plaintiffs were challenged that was through their motion for reconsideration, which they withdrew because as a result of that Second Circuit opinion, Your Honor, those two documents were, the government was compelled to release them. Well, but what happened is they released it over there and then the District Court here said, hey, is this over basically? And said, are you guys, can you work this out? And so it seemed to sidetrack or make it seem like the issue was moved, but looking at the record now, I mean, it's certainly, I'm having a hard time understanding the lack of candor that was owed to the District Court when you have the same issue. And I'm not confident that it would have affected the material difference in the outcome here, which can make them eligible and entitled to fees. But Your Honor, we are speculating because what in fact happened, let's focus on what actually happened, Your Honor. This was a Me Too lawsuit. Well, the plaintiffs in the Southern District were questioned by the government before. They did, Your Honor. So they weren't coming out of nowhere. No, they were not. However, at the time that they filed their lawsuit, the proceedings in the Southern District were already underway by several months. I think by several days, actually. No, Your Honor, actually it was by several months. The first case was the New York Times case. Yes, but the first New York Times case was filed in December. Well, do they have a notification? They are. I think so. Well, in fact, Your Honor, both sides continued to litigate. We did attempt to stay this case so that it would proceed in one, and the court said no. If that had been granted, then there would be no fees in this case, but the result would have been exactly the same because the Southern District compelled the release of the two documents. Actually, it didn't. That's the problem. It didn't. In fact, Your Honor, let's talk about the first memo. No, let us talk about the second memo. Okay. What the Second Circuit did was, based on these intervening events, which included primarily the leaking of the draft DOJ memorandum, the white paper, based on that, the court said, you have to disclose the OLC DOD memorandum, and in fact, it attached it to its amended opinion, and it said, based on this intervening information, we reject all of the basis for your glomar response, and those were the same arguments. But the government made impossible answers after the glomar response. Actually, Your Honor, the government was making the same arguments for the OLC DOD memorandum as it made for the CIA memorandum. They were the same arguments. That's why I ended up convictualized by doubling your orders. But, uh, let's go back a minute. If you answer my statute for intervening, why are we even doing this? I mean, as I read the amended statute, it was written really to preclude precisely this kind of incrimes, the litter, and these causation issues that are really not fathomable anyway. The government probably doesn't know why it did it. It did it because there was a lot of stuff going on, and it finally made some tactical decisions. And my understanding of what the statute, uh, is that if there was a voluntary unilateral change position, which there was, right, in this case? Not in this case, Your Honor. Again, Your Honor, our position is... Well, they gave them a document that they had had for a startling three years. They handed them... They gave a document to the ACLU and the New York Times. At that point, it was public because FOIA got disclosure to want disclosure to all. It was because no purpose would have been served once it became public for having the United States saying, we have this responsive document. We just gave it to the ACLU and the New York Times because we were compelled to. I disagree, Your Honor. Yes, Your Honor. This was something that the government did not want to make public because it was going to spit it to the Southern District in camera to see whether or not it should be made public or not. And while that was all going on, they're taking the position of the Southern District to see what material is being spitted in camera. And at the same time, in California, they voluntarily disclosed it, which meant that that litigation happened. The state was not voluntary to disclose it. Because that's not exactly how it happened, Your Honor. Here's how it happened. The Second Circuit said, I'm remanding to the District Court. Here are the grounds for the Lomar response. We reject them. We're remanding. You have to begin production of all responsive OLC documents in camera to the District Court along with... It did, and the District Court rejected. Right, meaning that the government was still fighting. Right. And at that point... At some point before that, it's been represented today that the government came to the courthouse here and said, if we give you that document, will this case be over? And I do not know about that, Your Honor. But what I would say is... You guys have an interrogation somewhere in this case that may get out. I don't recall that, Your Honor. But I'm not questioning it. The answer for us is, was it compelled by the combination of the Second Circuit and the District Court? I want to go back to the statute. The statute doesn't say anything about was it compelled. It says, was there a voluntary or unilateral change in decision by the agency if the complainant's claim is not insubstantial? We know it's not insubstantial, right? Because it prevailed... You're telling me that it prevailed in New York. But we know it wasn't insubstantial. We are talking about the question, is it really a causation question? There is a question about whether there was a voluntary or unilateral change in this case. But where are you getting the causation? The causation comes from this Court's decision in Church of Scientology, in Long v. Cyrus, which continued... Church of Scientology was in the 80s. Long v. Cyrus was in the 90s. And there's a specific statute that was written after the candidate and did not incorporate a causation standard. Presumably, there's a pretty good reason. I haven't looked at the legislative history, but I'm really kind of amazed that nobody's agreed to this. Is there any case after this amendment that applies the same standard from the 80s to 90s? Your Honor, there are no other cases that are exactly like this one because I don't want to know is there any case of any kind under the Paternity States under FOIA that applies a causation standard of the kind you're arguing for. Your Honor, we'd be happy to file a letter next week with the Court. My understanding is there have been cases... There have been cases, more recent district court decisions, they do tend to follow that same language in Church of Scientology, which is... I don't know if there's any appellate cases. Anybody take this language into account? Any appellate case? Or any case which has looked at the statute and said this is a different kind of discussion? Oh, if it discusses whether it is different, no, Your Honor. There is not. That is followed up on Your Honor's point. What they do say is that the burden, contrary to what the plaintiff has said, the burden is on the plaintiff to come in and present convincing evidence, and that's the language from Church of Scientology. Why? Well, the first thing it has to show is that the filing of the FOIA suit was necessary to obtaining the evidence. And second, they have to show that the filing of their FOIA lawsuit had a substantial causative effect. And you concede that it was necessary? No, Your Honor. In fact, if they had not filed their suit, these two documents would still be available to the public. The government was fighting in the Second Circuit the Southern District case, but they were released in the Southern District case. We disagree on that issue. But, Your Honor, we did release the redacted CIA memo to the ACLU and the New York Times before the FOIA. Because at that point, Your Honor, under FOIA, disclosure to one is disclosure to all. Yes, Your Honor. Yes. This Court has said in previous cases that it is a decision for the district court in the first instance. Well, Your Honor, there are at least four factors that the Court is going to look at, but you can consider additional factors as it wishes. I think the court is, the district court, is fully capable of making that determination. But again... Your Honor, I'm trying to find out how can I persuade you that, in fact, these disclosures were made in the other case. And this is a case of FOIA plaintiffs trying to bribe the co-chairs. Let me ask you something. With regard to the second document. Yes, Your Honor. Your Honor, I was under the impression, I'm sure that plaintiff's counsel can correct me, but I was under the impression it was not electronically. No, Your Honor, because there would have been, what would have been gained by forcing, by saying to them, go get it from the ACLU. Well, they had a reason to be doing it in this case, which is they had a moot. They were trying to moot out this case, right? No, Your Honor. They had a reason. We had a reason to do it in the Second Circuit case, and that is because... Your Honor, the grounds for withholding the CIA memo and the grounds for withholding the OCDOD memo is exactly the same. And once those grounds were removed, the government did not have additional arguments that he's going to make. Your Honor, there were some additional arguments they were going to attempt to make, but the district court was not receptive. And it was clear at that point, by setting the August 15th deadline, that that CIA document was going to be disclosed. So, what the government did was disclose the redacted version to the ACLU and the New York Times, and then there was argument about whether, about the redactions. As I understand it, the government has put in no evidence here, in no actual evidence. Your Honor, it certainly is a possible inference that the reason they decided to capitulate New York is they still had this California case, and if they didn't hand it over to lawyers in California, they were going to have to have this voted to reconsider in California. And the likely result in California was going to be to follow the Second Circuit, now that she had the whole story. And so then they were going to have to litigate in California, even if they didn't litigate in New York. Now, is that a possible scenario? No, Your Honor. I'd like to go back to, there was, when you started this, when you started your question, I'm sorry if you could, I'm getting you out of, What's this, my understanding, what happened? There was weak confers going on in California about whether the case was moved. And they had this one more document. Right. And that started, of course, because the Second Circuit disclosed that first document. Right? So that's when the meeting concluded. It started because there was a motion for reconsideration at this time. Right. By the judge. Your game was talking about, which is something that perhaps lays a lack of candor with regard to the original California litigation. And so that was going on in California, and the court wanted to know whether the case was moved or not. And they had this weak confer. And they said, well, we have another document. If we can't receive it, we'll now put out the case. Meanwhile, they're dealing with a district judge in New York, and they are still trying not to release it in New York. And then, at some point, And I should add, it's not simply the one document. I think there were maybe ten documents. This was really a discussion with the district court in the Southern District about numerous documents. And, as I said, those two documents, the DOD and the CIA documents, were the two for which the arguments had been the same, the justifications had been the same. So removing the one meant that there was no other argument the government was going to make. So at the time, they agreed to release it, which they did physically and even electronically in both places. They serially had a problem in New York, which was that maybe they expected the judge to rule against them. They had a problem in California, which is that there could be a motion for reconsideration granted if they continue to argue about this document. So they had problems in both places. And we know, I mean, it wasn't likely. What happened was they said, well, we've got these problems. There's no point, I mean, in not releasing it. Because if we release it, even if we fight and won, we're going to still have the problem of the other. Well, Your Honor, this does come back to that standard of review question. Also, who has the burden of proof? And although the plaintiff says that the government should have put information in, in fact, this court said in Church of Scientology, and this goes back to why I think the statute could have a causation requirement, because it's so foolish to continue to be doing it. Church of Scientology did say, Your Honor, as long as there's a statute at that point. Well, what courts have said since is that the Open Government Act of 2007 restored what had been the cases on those. Besides, in our brief, I think, since the statute. Yes, there was one since the statute. But Judge Berzon was asking for proof. You know, I'll have to send you a letter next week, Your Honor, when I'm back in Washington, but I believe I broke my neck with one of them. We just cited in our brief that specifically stated I didn't want to say I looked comprehensively, but when I looked at it, I couldn't find anything. Yes, and they said that, in fact, it was to reinstate the catalyst theory. Yes, but also to define it, and they defined it in this way, which is sensible because of exactly the kinds of problems we're having here. Well, the courts have always treated it as the plaintiff's responsibility and burden to put in the, present the convincing evidence. I've never asked a question your way over time. I know, in terms of the, well, it's our fault, but in terms of the de novo clear air question on whether the district court is really doing anything, I think this is quite, is he right that the district court arguably doesn't have the right standard here because they released the documents. First of all, he says largely, he largely doesn't quite answer the question on your theory of the case. As a result of the ruling in the New York Times, not as a result of the ruling in this case, but again, the statute isn't about rulings. It isn't, but the biggest piece of evidence in this case, Your Honor, was that second certain opinion because the government treated that as effectively compelling the government's release of those documents. As a result of the ruling in this case. It didn't have to be as a result of the ruling in this case. Well, the district court's, the district court's decision reflects the fact, finding a fact, reflects the fact that the disclosures did not happen in this case. They happened in the other case. And the plaintiff received it. Anyway, New York Times. Thank you very much, Your Honor. I'd like to ask a short question, just before I go to my spot, Your Honor. It seems to me that it may be counseling of, I mean, one thing that struck us, I think, certainly in the public case. In this public case, it might be appropriate for me to ask if the public had money to do something. Your Honor, we're already paying out money in the Second Circuit litigation. I mean, they're the ones who actually won these documents. And because the, all of the claims. Is it not possible for two good faith lawyer plaintiffs in two separate proceedings or parallel proceedings seeking the same materials to be allowed recovery? It seems like when you look at the intent, which actually Your Honor, Congress intended, everything be as easily viewed as possible by the public. Just wondering if that's. We wouldn't rule that out. But there's a reason, I think, why there is a complete absence of case law with two unrelated requesters seeking money for the same disclosure of the same document. It doesn't tend to come up, because in each case you would need to have factual findings by the district court that this was a substantial cost for facts. I actually thought that if there was ever a case, this might be one. And that's why I think the question of mediation is an interesting one. There was one point that Your Honor raised that I wanted to, if I could just very briefly, it was about the in-camera part of it. Yes, the order was in the Second Circuit for the district court for the Southern District to review those remaining OLC responsive documents in camera. However, that was so that if the government wanted additional protections or wanted to make some argument that waiver didn't apply, it could do so. So there was no reason for it not to release the CIA document to the ACLU and New York Times if it wasn't going to make those arguments. And arguments occurred afterwards where those two parties, I believe, challenged some of the redactions. Thank you, Your Honor. Thank you very much. Thank you for your help. Thank you. Your Honor, a few things. First of all, I'd like to make absolutely certain that the panel looks at pages 421 and 422 of the evidentiary record, the Declaration of Tomsburg, which clearly states that in the meet-and-confront process before things went back to the Southern District of New York, not only did the government say there's an additional responsive document, but the government said it's our hopes that this document moves the case. And there's a lot of discussion of this August 15th deadline, which was set... It's the deadline that the government said was set by the district court in the Southern District of New York. The August 15th deadline was first disclosed, according to page 422 of the evidentiary record, to First Amendment Coalition and was a government-generated deadline that was then accepted by the district court and adopted by the district court in the Southern District of New York, not one that came down from the judge, but one that came up from the government. So that's your close-up. Yes, Your Honor. Additionally, you had asked a question about mediation. The parties attempted to mediate. We enrolled in the Ninth Circuit mediation program, and there was some back and forth, but the government's position was that no fee award, little to no fee award was necessary. I think it was an instance in the record, because it's mediation, but that we were due maybe $1,000 worth of fees, and they didn't want to come and sit down. So mediation's already been attempted. Thirdly, there's some discussion about the significance of the white paper, and the government took the position that the white paper, that there was candor, but the government merely said that it had been acknowledged and did not say that it was released, and our court seized on that distinction in order to avoid considering it. Once the FDA came out, they could have corrected it. You'd have to ask the FDA to do it. The fact that you relied on that distinction, in other words, they might have thought the distinction mattered, so they should have relied on it. Once you relied on it, it could have been corrected. And the government's position that it didn't matter was that the white paper didn't matter. We have a church of Scientology, but what do we do in search of Scientology? Because it seems like that is the law regarding the part of substantial cost of effect, or do you disagree? First of all, it was the law before the statute was amended to take a much broader approach. I don't think you did. I think you're arguing with Judge Bruce LaCresta. It's an argument that is... The answer is no, you didn't argue it in your brief, did you? Not in our appellate briefing. We assumed a church of Scientology. We assumed a church of Scientology. That's correct. But even if the church of Scientology does apply, First Amendment Coalition put forth more than circumstantial evidence of causation, and additionally, there are cases where the government didn't put a declaration in here, but there's at least one case that's been cited, I believe it's the Baker case, where the government didn't put in a declaration that said this case was not the cause of the production of the document, and the court, even with a declaration like that, said, well, the balance of the evidence shows that that declaration doesn't hold water. I think the problem is that when you're talking about, in order to make the causation decision, and simply in a case like this, you have to get into the work product and mindset of the government, why did they make the decision, which is, they're not going to do it, and so it's somewhat mysterious. I agree, Your Honor. The point is the government didn't even try. The government supported Exemption 5. So the burden is on you, and your argument is, as long as you have circumstantial evidence, you should prevail, or is there going to come up and show something else? Well, we have more than circumstantial evidence. We also have statements from the government that say that we're providing you with this government and providing you with a CIA memo in hopes that it moves the case. Okay, thank you very much, Your Honor. Thank you. There's a quote you said, but I'll take it, and I'll sell you a regular letter. It's a daily letter. I don't know if you need it or if you need me to take it. I don't know if you need it. I think the reference to the previous statement is just using it as evidence in the statement. That case, also, was before I put this in. That case was before the amendment. Because it was actually after the amendment, but it said the amendment was not retroactive. So therefore, it did not resolve the question. Thank you very much. Thank you.
judges: Berzon, Murguia, Block